SUBMITTED UNDER SEAL

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
Clerk's Office
USDC, Mass.
Date 6/10/05
By _____
Deputy Clerk

UNITED STATES OF AMERICA   )
                           )
         V.                )   CRIMINAL NO. 04-10255-WGY
                           )
RONALD ZAMPANTI            )
                           )
         Defendant.        )

GOVERNMENT'S MOTION FOR DEPARTURE PURSUANT TO
SECTION 5K1.1 OF THE UNITED STATES SENTENCING GUIDELINES

The United States of America, by and through United States Attorney Michael J. Sullivan and Assistant United States Attorneys Ernest S. DiNisco and Cynthia A. Young, hereby submits this motion to depart downward from the defendant Ronald Zampanti's guideline sentencing range, based upon his substantial assistance to the authorities pursuant to U.S.S.G. §5K1.1.

I.   PROCEDURAL HISTORY

On August 24, 2004, the United States filed a criminal Information against defendant Ronald Zampanti ("Zampanti"). The Information stemmed from a plea agreement between the United States and Zampanti, dated November 6, 2001. On February 22, 2005, Zampanti pleaded guilty to the two-count Information, which alleged that he conducted an illegal gambling business, in violation of 18 U.S.C. §1955, and engaged in a money laundering conspiracy, in violation of 18 U.S.C. §1956(h). Under the Sentencing Guidelines, Zampanti's total offense level is 13 and his criminal history category is I, resulting in a guideline

sentencing range ("GSR") of 12 to 18 months' imprisonment.

From the mid-nineties through the early winter of 2001, Zampanti was a bookmaker who was forced to pay "rent" or tribute to members of the New England La Cosa Nostra ("LCN") in exchange for "permission" to operate his illegal gambling business.

Zampanti and five other bookmakers began cooperating with the government in 2001. All of these individuals were charged via criminal informations, signed plea agreements in 2001, and subsequently testified before a federal grand jury against members of the LCN and others. Each of these bookmakers cooperated against the defendants in United States v. Simone, et al. (Criminal No. 03-10356-MLW), in which Frederick Simone ("Simone"), Vincent Gioacchini ("Gioacchini"), and Francis White ("White") were indicted on racketeering, extortion, and loansharking charges. All three Simone defendants have now pleaded guilty, although only White has been sentenced.[1] Based upon the plea agreement and the applicable GSR, Simone is likely to receive a sentence of 63 months' imprisonment; Gioacchini faces a GSR of between 41 and 51 months' imprisonment; and White has been sentenced to 30 months' imprisonment.

Zampanti also cooperated against his gambling partner, Carmine "Junior" D'Amelio ("D'Amelio"). Zampanti and his father,

---

[1] Sentencing for Simone and Gioacchini was originally set for May 4, 2005, but was continued on motion of the District Court.

Joseph Zampanti, operated an illegal sports bookmaking business in East Boston and Revere, Massachusetts. They were partnered in the gaming business with Carmine "Junior" D'Amelio, sharing profits and responsibilities equally. D'Amelio was indicted by a federal grand jury (Criminal No. 03-10355-DPW), and has since pleaded guilty and been sentenced for violating the federal gambling statute (18 U.S.C. §1955); for conspiracy to launder money (18 U.S.C. §1956(h)); and for a Klein conspiracy, that is, conspiracy to evade income taxes (18 U.S.C. §371). Judge Woodlock sentenced D'Amelio to one day in prison (the day of his arrest) and three years' supervised release, with one year in home confinement. D'Amelio's sentence was based exclusively on his wife's mental health issues.[2]

Zampanti testified before the grand jury which indicted Simone, Gioacchini, and White on RICO, Hobbs Act extortion, and loansharking charges and would have testified at trial but for the guilty pleas of each of the defendants. In summary,

---

[2] D'Amelio's wife had a documented depressive condition, including three failed suicide attempts, all of which was described in a letter to Judge Woodlock from the wife's MGH psychiatrist. Judge Woodlock found that, even in a pre-Booker era, there was sufficient evidence of extraordinary family circumstances to warrant a departure. Judge Woodlock concluded that it was highly likely that the defendant's incarceration would trigger another major depressive episode and suicide attempt. Judge Woodlock also concluded that the defendant's crimes were economic in nature, thereby warranting an economic penalty - 12 months' home detention with no possibility of employment. The government objected to the departure and the sentence.

Zampanti, like the other bookmakers mentioned earlier, testified that he was required to pay protection money to a member of the LCN - Gioacchini in Zampanti's case - in order to operate his illegal business. This street tax or tribute is known locally as "rent." The evidence demonstrated that this racket worked because if an individual bookmaker refused to pay, he/she would have been forced to shut down or physically harmed. Ultimately, most bookmakers, like Zampanti and his partners, found it easier to pay organized crime figures and treat the extortion payment as a cost of doing business. All of the individual cooperators testified to their knowledge of the rent scheme. Zampanti testified that he and his partners paid Gioacchini "rent" or tribute on a monthly basis starting soon after Gioacchini took over the rent collections from Robert "Bobby" Luisi, Jr. in the summer of 1999. The illegal gambling business continued to pay Gioacchini monthly, often at an East Boston restaurant, until January 2001. During the fall of 2000, judicially-authorized electronic surveillance captured Gioacchini discussing the rent payments he had received from "Junior" (D'Amelio), one of Zampanti's partners. Because of his history of dealing with the LCN, Zampanti was acutely aware of Gioacchini's reputation for violence. His grand jury testimony reflected this fact and any assessment of his cooperation must take into account the risk to which Zampanti subjected himself as a result of his cooperation.

The prosecutorial strategy in developing the <u>Simone</u> case was to have "a strength (and safety) in numbers" approach. Since none of the cooperating witnesses was or will be protected, the government tried to develop as many cooperating witnesses as possible in order to make a prosecutable case against each of the defendants. Simone and Gioacchini are "old school," long-time members/soldiers of the LCN. They are both very violent and dangerous men who were facing federal charges in that case after having served significant prison sentences. For example, Simone was released from a prison sentence in February 1998 after serving nearly 12 years in state custody for his role in the gangland slaying of Angelo Patrizzi. Patrizzi's body was found hog-tied in a motor vehicle trunk in the vicinity of the General Edwards Bridge in Lynn, Massachusetts, in April 1981. Simone was also adjudicated a delinquent in a juvenile proceeding involving a stabbing death in the early sixties. Simone clearly earned his nickname "the Cord," and his dangerousness cannot be overstated.

Gioacchini was also an accomplished LCN soldier, the youngest member ever to be inducted into the New England LCN. Gioacchini was previously convicted and sentenced in federal court for the District of Massachusetts on racketeering charges in 1991. Part of the proof in that federal racketeering case showed that Gioacchini was one of approximately 20 LCN members who attended an induction ceremony in Medford, Massachusetts, on

October 29, 1989.

White, the final defendant in <u>Simone</u>, was also a dangerous individual. For decades, White, despite his usurious lending practices, had never been prosecuted. He had a teflon-like quality to him and, as a significant earner, he was consistently controlled by the LCN's most powerful figures. As such, while White was not perceived to be personally dangerous, he was considered by his backers to be a significant money maker and someone worthy of their protection. Zampanti cooperated directly against White. White was a loan shark and Zampanti borrowed money at usurious rates of interest from him. Zampanti testified before the grand jury concerning the extortionate loans from White and was named as a loan shark victim in several substantive counts and predicate acts of racketeering in the <u>Simone</u> indictment.

Zampanti pleaded guilty to all charges in the information on February 22, 2005. As part of his plea agreement, he agreed to forfeit $95,500 and cooperate with the government. He had already been fully debriefed and testified before a grand jury investigating the illegal activities of the LCN. Zampanti was also prepared to testify at the trials of Simone, Gioacchini, White, and D'Amelio, until they decided to plead guilty.

The United States Probation Department has determined Zampanti's applicable GSR to be 12-18 months' incarceration,

based upon an offense level of 13 and a criminal history category of I, and the applicable fine range to be $3,000 to $700,000.

II. ARGUMENT

　　A.　Legal Basis

Although advisory, U.S.S.G. §5K1.1 permits the Court to impose a sentence of imprisonment below a defendant's applicable GSR:

> [u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense[.]

U.S.S.G. §5K1.1.

Further, Section 5K1.1(a) provides that the appropriate reduction shall be determined by the Court based upon, but not limited to, the following considerations:

　　(1)　the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

　　(2)　the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

　　(3)　the nature and extent of the defendant's assistance;

　　(4)　any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

　　(5)　the timeliness of the defendant's assistance.

B.  Government's Evaluation of the Assistance Rendered

Zampanti's cooperation was very useful to the government. Indeed, given the government's prosecutive strategy of using several unprotected witnesses to make its case, the defendant was a significant witness. His testimony was important to the government's case in Simone principally because it was corroborated in detail by judicially-authorized electronic surveillance which would have proven extremely persuasive in the event of a trial. He was identified by name as a loan shark victim in the indictment and would have testified at trial consistent with his grand jury testimony. Lastly, as an equal partner in the illegal sports betting business conducted with D'Amelio, Zampanti testified as to the nature and scope of the betting business and identified the yearly income that it generated. His testimony helped support the illegal gambling, money laundering, and Klein conspiracy charges brought against D'Amelio.

C.  Truthfulness, Completeness, and Reliability of Information Provided

Zampanti has spent numerous hours with law enforcement agents over the past few years. He has patiently and repeatedly recounted every detail that he can recall of approximately ten years of illegal gambling activities. Additionally, the government believes that the reliability of the information provided by Zampanti has been corroborated extensively. In sum,

he has cooperated in a truthful and thorough manner. Indeed, Zampanti remains totally cooperative and continues to respond unhesitatingly when asked follow-up questions by investigators and prosecutors.

    D.   <u>Nature and Extent of Assistance</u>

The defendant has fully cooperated in a significant prosecution of organized crime in this district. After signing a plea agreement in 2001, Zampanti appeared before the grand jury and answered all questions asked of him. The grand jury returned an indictment which identified him as an extortion victim and used other information provided by him as the basis for additional substantive counts and predicate acts of racketeering charged against Gioacchini and White. In addition, his testimony helped substantiate the illegal gambling, money laundering, and tax evasion charges against D'Amelio.

    E.   <u>Danger to the Defendant</u>

The defendant's cooperation against some of the most serious and violent offenders to appear in this Court has placed him and his family at considerable risk. In short, the government believes that Zampanti has exposed himself and his family to danger as a result of his voluntary cooperation.

    F.   <u>Timeliness of Assistance</u>

Zampanti signed a proffer letter with the government in the spring of 2001. Months later, after extensive debriefings, he

agreed to cooperate and signed a plea agreement dated November 6, 2001. Thus, the defendant cooperated in an extremely timely manner. He admitted his role in criminal activity before any formal charges had been initiated, saving the government considerable time and effort in bringing legal proceedings against him, and further spared the Court the time and expense of a trial. Moreover, by cooperating promptly, the government was able to use testimony corroborated extensively by electronic surveillance as the basis of various substantive counts and predicate acts of racketeering charged against Gioacchini, White, and D'Amelio in indictments returned by the federal grand jury in December 2003.

III. GOVERNMENT'S RECOMMENDATION

Accordingly, based upon the important and timely substantial assistance provided by Zampanti as discussed above, the United States respectfully recommends that Zampanti receive a downward departure from his GSR of 12 to 18 months' imprisonment, and be given a sentence of three years' probation, a fine of $15,000, and a special assessment of $200. The United States further requests that Zampanti be ordered to forfeit the agreed upon amount of $95,500.

IV. CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court depart downward from

Zampanti's GSR because he has rendered substantial assistance to the United States. The United States respectfully recommends that the Court impose a sentence of three years' probation, a fine of $15,000, a special assessment of $200, and that the Court order forfeiture of $95,500.

          Respectfully submitted,

          MICHAEL J. SULLIVAN
          United States Attorney

By: *[signature]* Ernest DiNisco (sw)
     ERNEST S. DiNISCO
     CYNTHIA A. YOUNG
     Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

This is to certify that I have this day caused a copy of the foregoing to be served upon defense counsel in this case.

This 10th day of June 2005.

*[signature]* Ernest DiNisco (sw)
ERNEST S. DiNISCO
Assistant U.S. Attorney